ERIC JOHN LUHMANN, Plaintiff v. BILLY HOENIG and CAPE CARTERET VOLUNTEER FIRE AND RESCUE DEPARTMENT, INC., Defendants

No. COA03-23

(Filed 2 December 2003)

**Immunity— volunteer fire department—qualification**

The trial court erred by holding that a volunteer fire department was not entitled to summary judgment on immunity. Defendants met all of the statutory requirements for a rural fire department or fireman and were responding to and suppressing a reported fire when the incident which gave rise to this negligence suit occurred. Plaintiff did not allege or show willful and wanton conduct and cannot survive defendants' properly asserted affirmative defense of immunity. N.C.G.S. § 58-82-5.

Judge WYNN dissenting.

Appeal by defendants from order entered 5 February 2002 by Judge James R. Vosburgh, order entered 2 April 2002 by Judge W. Allen Cobb, Jr., order entered 19 April 2002 and judgment entered 3 May 2002 by Judge Carl Tilghman in Carteret County Superior Court. Heard in the Court of Appeals 7 October 2003.

*Gaskins & Gaskins, P.A., by Herman E. Gaskins, Jr., and Wheatly, Wheatly, Nobles & Weeks, P.A., by Stevenson L. Weeks, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by Edward C. LeCarpentier III and Jaye E. Bingham, and Barnes, Braswell & Haithcock, P.A., by R. Gene Braswell, for defendants-appellants.*

TYSON, Judge.

## I. Background

The Cape Carteret Volunteer Fire and Rescue Department, Inc. ("Fire Department") was originally incorporated as Cape Carteret Volunteer Fire Department, a North Carolina non-profit corporation, on 23 May 1966. The Fire Department changed its name to include "and Rescue" on 11 June 1998. On 13 October 1997, the Fire Department contracted with Carteret County to provide fire protection for all property lying within the boundaries of the Cape Carteret Fire and Rescue Service District. On 26 February 2000, a brush fire started in Eric Luhmann's ("plaintiff") neighborhood. The Fire Department responded to the scene to suppress the fire with several vehicles, including a tanker truck and a pumper truck. The two trucks were connected by a fire hose. Plaintiff obtained a beer from a neighbor and went down to the fire trucks. He started a conversation with his acquaintance, fireman John Clark ("Clark"). Plaintiff and Clark talked with each other and walked around to the side of one of the fire trucks. No fire lines or tape marked off the area. Plaintiff was not asked to leave the scene. The scene became chaotic as the Fire Department continued its efforts to suppress the fire.

Fire Department Chief Harold Henrich ("Chief Henrich") directed Billy Hoenig ("Hoenig") to leave the scene and replenish his water supply. The parties stipulated that Hoenig, a Fire Department employee, attempted to drive one of the fire trucks away from the scene without disconnecting the fire hose from the trucks. Hoenig engaged the "back up alarm" and looked behind the truck in his mirrors. Hoenig did not see plaintiff standing between the other truck and the hose. As Hoenig backed the truck, the hose connecting the two trucks gradually tightened. Plaintiff became pinned against the other truck and began screaming for help. Clark yelled into the radio for Hoenig to stop. The vehicle stopped, the pressure was relieved, and plaintiff fell to the ground.

Several emergency medical technicians on the scene rendered aid to plaintiff and loaded him in an ambulance. He was transported to Carteret General Hospital where he was diagnosed with a displacement fracture of the upper part of the tibia, the bone between the knee and the ankle. The day after the accident, Dr. Jeffrey Moore ("Dr. Moore"), an orthopedic surgeon, performed surgery on plaintiff to support the bone and repair the meniscus cartilage and the anterior cruciate ligaments. Following the surgery, plaintiff wore a large

leg immobilizer, took pain medication, and underwent physical therapy. On 20 September 2000, Dr. Moore performed another surgery to stabilize plaintiff's knee. Prior to the accident, plaintiff owned an auto repair business. Following the accident, he attempted to return to work, but eventually sold the business to an employee.

Plaintiff filed suit against Hoenig and the Fire Department ("defendants"). Both parties filed motions for summary judgment. The trial court found that: (1) Hoenig and the Fire Department were negligent as a matter of law, (2) plaintiff was entitled to partial summary judgment on the issue of negligence, and (3) both parties' motions for summary judgment on the issue of contributory negligence were denied. At trial, the jury found that plaintiff was contributorily negligent but that Hoenig had the last clear chance to avoid plaintiff's injuries or damages. The jury awarded plaintiff $950,000.00. Defendants appeal.

## II. Issues

Defendants contend the trial court erred by: (1) denying their motion for summary judgment, motion for directed verdict, and posttrial motions because Hoenig and the Fire Department were immune from liability pursuant to N.C. Gen. Stat. § 58-82-5; (2) granting plaintiff's motion for summary judgment on the issue of negligence; (3) submitting the issue of last clear chance to the jury; (4) denying defendants' motion to continue and motion for mistrial, as defendants were allowed only three days to obtain an independent medical examination; and (5) allowing evidence and testimony to be admitted when defendants were not provided with supplemental discovery responses in a timely manner.

Plaintiff cross-appeals and contends the trial court erred by: (1) allowing defendants to introduce evidence of signs on the fire trucks that read "Keep Back 400 Feet;" (2) submitting the issue of contributory negligence instead of comparative negligence; and (3) allowing defendants to include documents in the record on appeal, which were neither admitted nor considered by the trial court.

## III. Immunity

### A. Failure to Assert

Defendants argue the trial court's denial of their motion for summary judgment, motion for directed verdict, and posttrial motions constitutes error. Summary judgment is proper where the movant

shows that plaintiff cannot survive an affirmative defense. *Trexler v. Norfolk S. Ry. Co.*, 145 N.C. App. 466, 469, 550 S.E.2d 540, 542 (2001). Defendants contend N.C. Gen. Stat. § 58-82-5 grants them immunity and bars plaintiff's claims. Plaintiff asserts that defendants failed to assert this defense in their answer and are barred from asserting this defense on appeal. N.C.R. Civ. P. 8(c) requires that a party shall set forth a "short and plain statement . . . sufficiently particular to give the court and the parties notice . . . ." N.C. Gen. Stat. § 1A-1, Rule 8(c) (2001). Here, defendants' answer asserted as the fourth defense "sovereign, governmental, and qualified immunity."

Defendants asserted the immunity found in N.C. Gen. Stat. § 58-82-5 in their motion for summary judgment and at the hearing on the motion. "[U]npled affirmative defenses may be raised for the first time on a motion for summary judgment, even if not asserted in the answer, if both parties are aware of the defense." *Mullis v. Sechrest*, 126 N.C. App. 91, 95, 484 S.E.2d 423, 425-26 (1997), *rev'd on other grounds*, 347 N.C. 548, 495 S.E.2d 721 (1998); *see also Bank v. Gillespie*, 291 N.C. 303, 306, 230 S.E.2d 375, 377 (1976). Plaintiff was provided ample notice that defendants would assert this defense as required by N.C.R. Civ. P. 8(c).

### B. Statutory Immunity

N.C. Gen. Stat. § 58-82-5(b) (2001) provides that:

A rural fire department or a fireman who belongs to the department shall not be liable for damages to persons or property alleged to have been sustained and alleged to have occurred by reason of an act or omission, either of the rural fire department or of the fireman at the scene of the reported fire, when that act or omission relates to the suppression of a reported fire . . . unless it is established that the damage occurred because of gross negligence, wanton conduct or intentional wrongdoing of the rural fire department or the fireman.

Plaintiff did not allege "gross negligence, wanton conduct, or intentional wrongdoing" by the defendants in his complaint. A "rural fire department" is defined in that statute as: (1) a bona fide fire department; (2) incorporated as a nonprofit corporation, which is classified as not less than Class "9" under schedules filed with the Commissioner of Insurance; and (3) which operates fire apparatus of the value of five thousand dollars or more. N.C. Gen. Stat. § 58-82-5(a) (2001).

Defendants offered evidence to show the Fire Department is properly classified as a "rural fire department" pursuant to this statute. Chief Henrich's affidavit stated that at the time of the incident, the Fire Department: (1) was a fire and rescue department; (2) was incorporated as a non-profit corporation with a 9S rating from the North Carolina Department of Insurance; and (3) owned in excess of five thousand dollars worth of fire apparatus. Chief Henrich's uncontroverted testimony at trial also established that the Fire Department meets all statutory requirements of a "rural fire department." *Id.* Plaintiff's injuries occurred "at the scene of the reported fire" as Hoenig prepared to obtain more water, an act relating "to the suppression of the reported fire." N.C. Gen. Stat. § 58-82-5(b). Defendants' evidence shows their entitlement to the limited immunity established in N.C. Gen. Stat. § 58-82-5.

Plaintiff argues that N.C. Gen. Stat. § 58-82-5 does not apply and contends that N.C. Gen. Stat. § 69-25.8 applies to defendants. N.C. Gen. Stat. § 69-25.8 (2001) states:

Members of any county, municipal or fire protection district fire department shall have all of the immunities, privileges and rights . . . when performing any of the functions authorized by this Article, as members of a county fire department would have in performing their duties in and for a county, or as members of a municipal fire department would have in performing their duties . . . .

Plaintiff further contends that defendants waived this immunity by purchasing two insurance policies with limits of one million dollars ($1,000,000.00) each. N.C. Gen. Stat. § 153A-435 (2001) provides that the "purchase of insurance . . . waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function."

Plaintiff argues N.C. Gen. Stat. § 58-82-5 is not applicable because of the Fire Department's contract with Carteret County, receipt of money from Carteret County taxes, and the purchase of insurance qualifies it as a "fire protection district fire department" subject to the requirements of N.C. Gen. Stat. § 69-25.8 and N.C. Gen. Stat. § 153A-435. This argument requires us to recognize a "conversion" of the Fire Department from a "rural fire department" to a "fire protection district fire department." This interpretation would also require us to hold that N.C. Gen. Stat. § 69-25.8 abrogates the specific immunity provided in N.C. Gen. Stat. § 58-82-5.

N.C. Gen. Stat. § 69-25.8 was enacted in 1951 and was amended once for a technical modification in 1979. *1979 N.C. Sess. Laws* .ch. 714, § 2. N.C. Gen. Stat. § 58-82-5 was enacted in 1983 to provide a specific immunity that would apply in specific circumstances. Presuming the Fire Department is a "fire protection district fire department" as plaintiff argues, the specific and limited immunity provided by N.C. Gen. Stat. § 58-82-5 still applies to the facts at bar.

Our Supreme Court interpreted N.C. Gen. Stat. § 58-82-5 to mean that "the overall purpose of the General Assembly was to protect rural volunteer fire departments from liability for ordinary negligence *when responding to a fire." Spruill v. Lake Phelps Vol. Fire Dep't, Inc.*, 351 N.C. 318, 321, 523 S.E.2d 672, 675 (2000) (emphasis supplied). In *Spruill*, two rural fire departments responded to a reported fire and spilled water as they filled their fire truck tanks from a hydrant approximately one-half mile from the fire. *Id.* at 319, 523 S.E.2d at 674. This water froze on the pavement and plaintiff suffered injuries as his car hit the ice and spun off the road. *Id.* After plaintiff sued, defendants claimed immunity under N.C. Gen. Stat. §58-82-5(b). *Id.* at 320, 523 S.E.2d at 674. The trial court granted defendants' motion for summary judgment and this Court reversed. *Spruill v. Lake Phelps Vol. Fire Dep't, Inc.*, 132 N.C. App. 104, 510 S.E.2d 405 (1999). Our Supreme Court reversed and upheld the trial court's award of summary judgment in favor of the defendant-fire departments. *Spruill*, 351 N.C. at 323-24, 523 S.E.2d at 676-77. The Court stated that N.C. Gen. Stat. § 58-82-5(b) was amended in 1987 as part of "An Act to Expand the Traffic Control Authority of Firemen and Rescue Squad Members in Emergency Situations," which further indicated the General Assembly's intent to "provide statutory immunity for the ordinary negligence of a rural fire department's acts or omissions which relate to the suppression of a fire . . . ." *Id.*

In light of our Supreme Court's interpretation of N.C. Gen. Stat. § 58-82-5 in *Spruill*, we hold that defendants are immune from liability under N.C. Gen. Stat. § 58-82-5 under the facts at bar. Defendants met all three statutory requirements of a "rural fire department" or a "fireman" and were responding to and suppressing a reported fire when the incident occurred. Plaintiff did not allege or show willful and wanton conduct and cannot survive defendants' properly asserted affirmative defense of immunity provided in N.C. Gen. Stat. § 58-82-5. *Trexler*, 145 N.C. App. at 469, 550 S.E.2d at 542. The trial court erred in ruling that defendants were not entitled to summary judgment on immunity as a matter of law under N.C. Gen.

Stat. § 58-82-5. In light of our holding, we do not reach the remaining assignments of error.

## IV.  Conclusion

Defendants were entitled to summary judgment on statutory immunity. The trial court's order denying defendants' motion for summary judgment is reversed and judgment is vacated.

Reversed. Judgment vacated.

Judge LEVINSON concurs.

Judge WYNN dissents in a separate opinion.

WYNN, Judge dissenting.

Because I believe the contract between Carteret County and Cape Carteret Volunteer Fire and Rescue Department, Inc. ("Carteret Fire Department"), conferred the benefit of sovereign immunity under N.C.G.S. § 69-25.8 on the Carteret Fire Department, I respectfully dissent.

The record on appeal shows that the contract between Carteret County and Carteret Fire Department specifically provided that Carteret Fire Department would render fire protection services to the district in exchange for $0.10 per $100 valuation of property taxes collected by the county in the district. In performing its contract with the county, the Carteret Fire Department collected approximately $850,000.00 per year from the County, 98.7% of the department's annual budget. This infusion of funds allowed the Carteret Fire Department to pay the majority of its firefighters for their services. Also relevant, the Carteret Fire Department had two insurance policies in effect at the time of Luhmann's injury, each with a policy limit of one million dollars. Finally, the Carteret Fire Department did not initially claim to be a "rural fire department" under N.C.G.S. § 58-82-5; rather, the Fire Department's Answer asserted sovereign immunity (N.C.G.S. § 69-25.8) as a defense:

> these answering defendants allege that they are entitled to sovereign, governmental and qualified immunity, except to the extent those immunities may be deemed waived by the purchase of liability insurance . . .

Indeed, the Carteret Fire Department first developed its "rural fire department" theory in a 11 March 2002 summary judgment motion, almost two years after Luhmann filed his Complaint and less than two months prior to the Judgment from which they now appeal.

In light of their contract with and significant compensation from the county, no less than 98.7% of the department's budget, I would hold that Carteret Fire Department acted as a "fire protection district fire department," as was held by the trial court. As such, the Carteret Fire Department was entitled to sovereign immunity under N.C.G.S. § 69-25.8. However, because the Carteret Fire Department purchased two insurance policies, each with a policy limit of one million dollars, I would uphold the trial court's judgment in favor of Luhmann. *See* N.C.G.S. § 153A-435(a) (The purchase of liability insurance "waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function.").

Moreover, I disagree with the majority's contention that even if Carteret Fire Department was a " 'fire protection district fire department' as Luhmann argues, the specific immunity provided by N.C. Gen. Stat. § 58-82-5 would still apply to the facts at bar." N.C.G.S. § 69-25.8 and N.C.G.S. § 58-82-5 cover different types of fire departments, codify different immunities, and are not interchangeable. N.C.G.S. § 69-25.8 governs "district fire departments," whereas N.C.G.S. § 58-82-5 governs "rural fire departments." Since the Carteret Fire Department, by virtue of its contract with Carteret County acted as a "district fire department," it was entitled to immunity under N.C.G.S. § 69-25.8.

In sum, Carteret Fire Department acquired "district fire department" status by virtue of its contract with Carteret County. Although Carteret Fire Department enjoyed sovereign immunity under the statutory provision governing "district fire departments," N.C.G.S. § 69-25.8, they waived that immunity by purchasing insurance. Thus, the trial court's judgment was not erroneous and should not be disturbed.